UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMIE FIELDS,<br><br>    Petitioner,<br><br>v.<br><br>UNITED STATES BUREAU OF PRISONS,<br><br>    Respondent. | Case No. 18-cv-04757-HSG<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

Before the Court is the *pro se* petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2241 by petitioner Jamie Fields challenging the execution of her sentence by the Bureau of Prisons ("BOP").[1] Dkt. No. 1. For the reasons set forth below, the petition is denied.

## PROCEDURAL HISTORY

On April 11, 2017, petitioner was convicted in the District of Colorado for violations of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), Prohibited Person (Felon) in Possession of a Firearm, in *United States v. Fields*, 16-cr-00204-REB-02 (D. Colo.). Dkt. No. 11 at 6; Dkt. No. 11-2 ("Crowe

---

[1] Because petitioner is now on supervised release and no longer housed at FCI-Dublin, the Clerk of the Court is directed to substitute the Bureau of Prisons as respondent because it is petitioner's current custodian.
    When petitioner filed her petition, she was incarcerated in Federal Correctional Institution, Dublin ("FCI-Dublin"). She filed her petition in this Court and named as respondent the warden of FCI-Dublin. These steps properly complied with habeas procedure. *See Rumsfeld v. Padilla*, 542 U.S. 426 (2004) ("longstanding practice confirms that in habeas challenges to present physical confinement – 'core challenges' - the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official"). Her subsequent transfer into a Utah RRC and placement onto supervised release do not alter this analysis. A habeas petitioner remains in the custody of the United States while on supervised release. *Matus–Leva v. United States*, 287 F.3d 758, 761 (9th Cir. 2002). And "jurisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change." *Francis v. Rison*, 894 F.2d 353, 354 (9th Cir. 1990) (internal quotation marks and citations omitted).

Decl.) at ¶ 9 and Ex. 7. That same day, petitioner received a 30-month sentence which began to run on that date. *Id.* After being sentenced, petitioner was housed at Federal Correctional Institution, Dublin ("FCI-Dublin"), from May 19, 2017 to October 26, 2018. Dkt. No. 11 at 6; Crowe Decl., at ¶ 3. On August 7, 2018, while housed at FCI-Dublin, petitioner filed the instant petition challenging the calculation of her release date. Dkt. No. 1. On October 23, 2018, the Court found that the petition stated the following cognizable claims: (1) the BOP improperly delayed petitioner's placement date in a community residential reentry center in violation of applicable federal law and regulations; (2) the BOP failed to modify petitioner's sentence to account for "good conduct" credits; and (3) the BOP miscalculated petitioner's "prior custody" credits. Dkt. No. 9. The Court ordered respondent to show cause why a writ of habeas corpus should not be granted. Dkt. No. 9. On October 26, 2018, petitioner was placed in a residential reentry center ("RRC") in the state of Utah. Gustin Decl., at ¶ 3. On December 11, 2018, respondent filed an answer to the order to show cause. Dkt. No. 11. Petitioner did not file a traverse, and the deadline to do so has long since passed. On February 13, 2019, petitioner was released from the RRC to home confinement, meaning she was allowed to serve the remainder of her federal sentence at home, subject to certain conditions like electronic monitoring and drug testing. Dkt. No. 14-1 ("2020 Vickers Decl.") at 2 and Ex. 1. On April 24, 2019, petitioner was released from BOP custody via Good Conduct Time ("GCT") Release. 2020 Vickers Decl. at 2 and Ex. 1. Petitioner is currently serving a three year term of supervised release. 2020 Vickers Decl. at 2 and Exs 1-2. On January 22, 2020, because it was unclear from the record if petitioner was suffering collateral consequences from her sentence, the Court ordered the parties to show cause why this action should not be dismissed as moot. Dkt. No. 12. On February 6, 2020, mail sent to petitioner was returned as undeliverable. Dkt. No. 13. On February 13, 2020, respondent answered the Court's January 22, 2020 order to show cause, stating that the petition was not moot because if the Court were to rule that there was a BOP sentence computation error, petitioner could request a reduction in her term of supervised release. Dkt. No. 14.

**FACTUAL BACKGROUND**

**I. Petitioner's State and Federal Sentences**

On April 19, 2016, petitioner was arrested by Colorado state authorities (La Plata County, Colorado) for weapons possession by a felon. Crowe Decl., at ¶ 4 and Ex. 1.[2] On May 17, 2016, petitioner was released via writ from La Plata County, Colorado to Pueblo County, Colorado, as part of two different criminal matters, Case No. 2015CR002180 and Case No. 2014CR001962. Crowe Decl., at ¶ 6. On May 23, 2016, petitioner received an eighteen month sentence for motor vehicle theft in each of these cases, with the sentences to be served concurrently. Crowe Decl., at ¶ 6 and Ex. 3. On June 21, 2016, a writ of habeas corpus prosequendum was issued by the U.S. District Court for the District of Colorado for petitioner. Crowe Decl., at ¶ 7 and Ex. 4. On June 24, 2016, the United States Marshals executed this writ and transferred petitioner from state custody to federal custody to be prosecuted in *United States v. Fields*, 16-cr-00204 DW. Crowe Decl., at ¶ 7 and Ex. 5. On March 23, 2017, while petitioner was still in the custody of the United States Marshals pursuant to the writ, Colorado state authorities paroled petitioner from her Colorado state sentences, resulting in primary jurisdiction over petitioner being transferred from the state government to the federal government. Crowe Decl., at ¶ 8 and Ex. 6. On April 11, 2017, petitioner was convicted in the District of Colorado for violations of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), Prohibited Person (Felon) in Possession of a Firearm, in *United States v. Fields*, 16-cr-00204-REB-02 (D. Colo.). Crowe Decl. at ¶ 9 and Ex. 7.

**II. BOP Calculation of Petitioner's Sentence**

On April 11, 2017, the BOP began running the 30-month sentence imposed in *United States v. Fields*, 16-cr-00204-REB-02. Crowe Decl., at ¶ 9.

The BOP provided petitioner prior custody credit from April 19, 2016 through May 22, 2016 (time in state custody but not yet sentenced in her state cases), and from March 24, 2017 through April 10, 2017 (time in federal custody but no longer serving her state sentence and not yet sentenced in her federal case), for a total of 52 days. Crowe Decl., at ¶ 9. In determining prior

---

[2] That same day, petitioner was also charged by New Mexico state authorities on other charges, but these charges were dismissed on April 18, 2017. Crowe Decl., at ¶ 5 and Ex. 2.

custody credit, pursuant to 18 U.S.C. § 3585 (b), the BOP does not credit prisoners for time spent in official detention that has been credited against another sentence. In calculating the prior custody credit earned by petitioner, the BOP excluded May 23, 2016 to March 23, 2017, because this time was credited towards petitioner's state sentence.

The BOP calculated that petitioner was projected to earn 117 days of good conduct time ("GCT") credits. Crowe Decl., at ¶ 10. 18 U.S.C. § 3624(b) governs the provision of GCT credits. Under the BOP's interpretation of Section 3624(b), a prisoner is entitled to a maximum annual credit of 54 days of good time credit for each full year of imprisonment that she serves and a proportionally adjusted amount of credit for any additional time served that is less than a full year. In calculating the GCT credit for the final year (also the partial year), the BOP considers the amount of time remaining that will be served in prison, and not the amount of time remaining on the sentence. The Supreme Court has held that this interpretation is both lawful and tracks the language of § 3624(b). *Barber v. Thomas*, 560 U.S. 474, 480-92 (2010). In *Barber*, the Supreme Court specifically rejected the prisoner-plaintiffs' interpretation of 18 U.S.C. § 3624(b) as a straightforward calculation based upon the length of the term of imprisonment imposed by the sentencing judge (i.e. determining GCT credits by multiplying the sentence against 54/365). The *Barber* court reasoned that the prisoner-plaintiffs' interpretation would allow inmates to receive GCT credits for time not actually served. *Id.* at 479-83.[3] The *Barber* court approved the BOP's

---

[3] The *Barber* Court explained how to calculate the maximum GCT credits available to a federal prisoner:
> The defendant is sentenced to 10 years' imprisonment. As a prisoner he exhibits exemplary behavior and is awarded the maximum credit of 54 days at the end of each year served in prison. At the end of Year 8, the prisoner has 2 years remaining in his sentence and has accumulated 432 days of good time credit. Because the difference between the time remaining in his sentence and the amount of accumulated credit (i.e., 730 minus 432) is less than a year (298 days), Year 9 is the last year he will spend in prison. (Year 10 has been completely offset by 365 of the 432 days of accumulated credit.) Further, Year 9 will be a partial year of 298 days (the other 67 days of the year being offset by the remainder of the accumulated credit).
> Here is where the elementary algebra comes in. We know that x, the good time, plus y, the remaining time *493 served, must add up to 298. This gives us our first equation: x+y=298.
> We also know that the ratio of good time earned in the portion of the final year to the amount of time served in that year must equal the ratio of a full year's good time credit to the amount of time served in a full year. The latter ratio is 54÷365 or 0.148. Thus, we know that x÷y=0.148, or to put it another way, x=0.148y. Because we know the value of x

4

interpretation of 18 U.S.C. § 3624(b), which takes into account the amount of time actually served in prison, which can be less than the sentence imposed after accounting for GCT credits. *Id.*

Based on 52 days of prior custody credit, 117 days of GCT credit, and a 30 month sentence, the BOP calculated petitioner's projected release date to be April 24, 2019. Crowe Decl., at ¶ 11.

**DISCUSSION**

Petitioner was released to an RRC on October 26, 2018, and released from custody on April 24, 2019. Petitioner is currently on supervised release. Petitioner's claim regarding her placement in an RRC (Claim No. 1) is therefore moot. *Cf. Flast v. Cohen*, 392 U.S. 83, 95 (1968) (claim is considered moot if it has lost its character as a present, live controversy, and if no effective relief can be granted due to subsequent developments). However, petitioner's remaining claims (Claim Nos. 2 and 3 – failure to properly calculate her prior custody credit and her good conduct time credit) are not moot because her alleged over-incarceration could be redressed by reducing her term of supervised release. *See Mujahid v. Daniels*, 413 F.3d 991, 994–95 (9th Cir.2005) (holding appeal not moot despite intervening release of inmate on supervised release because court could reduce period of supervised release); *see also Gunderson v. Hood*, 268 F.3d 1149, 1153 (9th Cir. 2001). Accordingly, the Court considers petitioner's Claim Nos. 2 and 3, and respondent's arguments that that this petition should be dismissed because petitioner has

---

in terms of y, we can make a substitution in our first equation to get 0.148yI+Iy=298. We then add the two y terms together (1.148y=298), and we solve for y, which gives us y=260. Now we can plug that value into our first equation to solve for x (the good time credit). If we subtract 260 from 298, we find that x=38.

The offender will have to serve 260 days in prison in Year 9, and he will receive 38 days additional good time credit for that time served. The prisoner's total good time is 470 days (432+38=470). His total time served is 3,180 days.

As a final matter, while we have described the foregoing as the method to calculate credit for the portion of the last year to more transparently track the relevant statutory language, we note that the mathematical formula can be used to calculate the amount of maximum available credit for an entire sentence. Using the equations supplied above, *if we divide the total number of days in a sentence by 1.148, we get the minimum number of days that a defendant must serve in that sentence. If we then subtract the number of days served from the total number of days in the sentence, we arrive at the maximum number of good time credit days the prisoner can earn.* The statute, however, awards them on a yearly basis (but for the "last year or portion" thereof).

*Barber v. Thomas*, 560 U.S. 474, 480-92 (2010) (emphasis added).

5

failed to exhaust administrative remedies,[4] and because the BOP correctly calculated petitioner's sentence. Petitioner has not responded to these arguments.

## I. Exhaustion Requirement

As a "prudential matter," federal prisoners are generally required to exhaust available administrative remedies before bringing a habeas petition pursuant to 28 U.S.C. § 2241. *Huang v. Ashcroft*, 390 F.3d 1118, 1123 (9th Cir. 2004) (quoting *Castro–Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001)); *see also Martinez v. Roberts*, 804 F.2d 570, 571 (9th Cir. 1986). "[T]he requirement of exhaustion of remedies will aid judicial review by allowing the appropriate development of a factual record in an expert forum; conserve the court's time because of the possibility that the relief applied for may be granted at the administrative level; and allow the administrative agency an opportunity to correct errors in the course of administrative proceedings." *Ruviwat v. Smith*, 701 F.2d 844, 845 (9th Cir. 1983).

Exhaustion may be excused if the administrative remedy is inadequate, ineffective, or if attempting to exhaust would be futile or would cause irreparable injury. *Fraley v. United States Bureau of Prisons*, 1 F.3d 924, 925 (9th Cir. 1993). Failure to exhaust administrative remedies may be excused where an official policy of the BOP requires denial of the claim. *Ward v. Chavez*, 678 F.3d 1042, 1045–46 (9th Cir. 2012). Factors weighing in favor of requiring exhaustion include whether (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision, (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme, and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review. *Noriega–Lopez v. Ashcroft*, 335 F.3d 874, 880–81 (9th Cir. 2003) (citing *Montes v. Thornburgh*, 919 F.2d 531, 537 (9th Cir. 1990)).

Because the exhaustion requirement applicable to Section 2241 petitions is judicially created and not a statutory requirement, a failure to exhaust does not deprive a court of jurisdiction

---

[4] Respondent also argues that the Court lacks jurisdiction to review the BOP's individualized decision on petitioner's RRC placement. Because petitioner's claim regarding her RRC placement is moot, the Court does not address this argument.

6

over the controversy. *Brown v. Rison*, 895 F.2d 533, 535 (9th Cir. 1990), *overruled on other grounds, Reno v. Koray*, 515 U.S. 50, 54–55 (1995). If a petitioner has not properly exhausted his or her claims, a district court in its discretion may either excuse the faulty exhaustion and reach the merits, or require the petitioner to exhaust his administrative remedies before proceeding in court. *Brown*, 895 F.2d at 535.

Here, it is undisputed that the Bureau of Prisons has established an administrative remedy by which an inmate in a federal prison may seek review of any aspect of imprisonment. *See* 28 C.F.R. §§ 542.10-542.17 (2016). It is also undisputed that an inmate must generally file and receive a denial at all three levels (Warden, Regional Director, and Central Office) before she is considered to have exhausted her available administrative remedies. *See* Dkt. No. 11-3 ("2018 Vickers Decl."), at ¶ 2. Petitioner reports that she has made efforts to resolve this issue informally. Dkt. No. 1 at 2-3, 6. The record reflects that on July 26, 2018, petitioner submitted a formal written administrative remedy request to FCI-Dublin, alleging that she was being illegally detained because her home detention eligibility date was October 14, 2017, and her release date was April 14, 2018, and both dates had passed. Dkt. No. 11-3 at 7. The record does not reflect a response from FCI-Dublin. On August 7, 2018, petitioner filed the instant petition. Dkt. No. 1. On August 27, 2018, petitioner submitted a formal written administrative remedy request with the Western Regional Office, which was assigned the log number 952831-R1 ("Request No. 952831-R1"). Dkt. No. 11-3 at 6. This request was rejected on September 7, 2018 for failure to first file the request at the institutional level and receive a response from the Warden. 2018 Vickers Decl., at ¶ 2 and Ex. 1. Petitioner states that she has not exhausted administrative remedies, stating that the administrative remedy process at FCI-Dublin is broken; that there is law holding that she does not need to exhaust administrative remedies; and that she does not have time. Dkt. No. 1 at 8.[5] The record is unclear as to whether administrative remedies were available to petitioner,

---

[5] Presumably, petitioner believed that she should be excused from the BOP's administrative remedy process because it is was ineffective, in that she was not receiving any response from FCI-Dublin, and that attempting to exhaust would be futile because resolution of her issue through the BOP's administrative remedy process would not be occur in time for her to have the benefit of the April 14, 2017 release to an RRC or release as soon as possible. However, the Court cannot speculate as to why petitioner failed to exhaust her administrative remedies.

7

specifically, whether FCI-Dublin responded to her administrative remedy request. However, the Court declines to decide whether administrative remedies have been exhausted because the petition fails on the merits.

**II.    Calculation of Petitioner's Sentence**

Petitioner argues that she is entitled to 357 days of prior custody credit and 135 days of GCT credits, instead of the 52 days of prior custody credit and 117 days of GCT credits calculated by the BOP. However, as explained below, the BOP correctly calculated petitioner's sentence. Petitioner therefore is not entitled to habeas relief or a recalculation of her sentence.

**A.    Calculation of Prior Custody Credit**

The BOP correctly declined to give petitioner credit for her time spent in state custody that was credited to her state sentence. 18 U.S.C.A. § 3585(b) requires that an inmate be given credit for any time he has spent in official detention prior to the date the sentence commences that has not been credited against another sentence. 18 U.S.C.A. § 3585(b). Petitioner was arrested by Colorado state authorities on April 19, 2016; sentenced by the Colorado state courts on May 23, 2016; paroled by Colorado on March 23, 2017; and sentenced by the United States District Court of Colorado for the underlying conviction on April 11, 2017. In other words, from May 23, 2016 to March 23, 2017, petitioner was serving the sentence she received in two Colorado criminal matters, Case No. 2015CR002180 and Case NO. 2014CR001962. Accordingly, from the date of her arrest (April 19, 2016) to the date she began serving her federal sentence (April 11, 2017), petitioner is only entitled to prior custody credit for April 19, 2016 to May 22, 2016 (time in state custody but not yet sentenced in either her state or federal cases), and March 24, 2017 to April 10, 2017 (time in the custody of the U.S. Marshals but no longer serving her state sentence and not yet sentenced in her federal case), for a total of 52 days. 18 U.S.C.A. § 3585(b) prohibits petitioner from receiving prior custody credit for her time in custody when she was serving her state sentences, May 23, 2016 to March 23, 2017.

**B.    Calculation of GCT credits**

The BOP accurately calculated that petitioner is entitled to 117 days of GCT credits. Petitioner incorrectly assumed that she is entitled to GCT credit at the rate of 54 days per year of

8

sentence imposed. The Supreme Court has rejected this interpretation of 18 U.S.C. § 3624(b). *Barber,* 560 U.S. at 480-92. Rather, the amount of GCT credit available for the final, generally partial, year of imprisonment is calculated by ensuring that the number of days to served in the final year plus the number of GCT credits earned for that final year are equal to the days left in the sentence, accounting for the GCT credits already earned for the other years of imprisonment. *Id.*

Petitioner received a 30-month sentence. Pursuant to 18 U.S.C. § 3624(b), she is entitled to 54 days for each year except the last year. Accordingly, petitioner was entitled to 108 days of GCT for the first two years of her sentence. After serving the first two years of her sentence, she had 184 days remaining on her sentence. After accounting for her 108 days of GCT credit, petitioner had 76 days left of imprisonment after serving her first two years. In calculating the GCT credit due on the remaining 76 days of imprisonment, the number of days to be served in Year 3 plus the number of GCT credit days earned in Year 3 must add up to the number of days of imprisonment remaining, here, 76 days. *Barber*, 560 U.S. at 478. Petitioner is therefore entitled to an additional 9 days of GCT credit for Year 3.[6] Overall, petitioner is entitled to 117 days of GCT credit (108 days for the first two years of her sentence and 9 days for the portion of Year 3 that she will serve). The BOP accurately calculated petitioner's GCT credits.

## CERTIFICATE OF APPEALABILITY

Petitioner is a federal prisoner bringing a § 2241 petition attacking the execution of her sentence. This petition does not attack the validity of her conviction. Accordingly, the Court need not address whether she is entitled to a certificate of appealability. *Harrison v. Ollison*, 519 F.3d 952, 958 (9th Cir. 2008) ("The plain language of § 2253(c)(1) does not require a petitioner to obtain a COA in order to appeal the denial of a § 2241 petition. Nor is there any other statutory basis for imposing a COA requirement on legitimate § 2241 petitions. Although state prisoners proceeding under § 2241 must obtain a COA, there is no parallel requirement for federal

---

[6] The number of days that petitioner would serve in prison in Year 3 is 63 days. Applying the rate of 54 days of GCT credits earned per year, petitioner would earn 9.32 days of GCT credits for the 63 days served in prison in Year 3. 63 days of prison time in Year 3 plus 9 days of GCT credits equals 76 days, which is the time remaining on her sentence after serving two years of her sentence and receiving two years' worth of GCT credits.

9

prisoners.") (internal citations omitted); *see also Porter v. Adams*, 244 F.3d 1006, 1007 (9th Cir. 2001) (holding that a successive 28 U.S.C. § 2255 motion disguised as a 28 U.S.C. § 2241 petition requires a certificate of appealability).

### IV.  CONCLUSION

For the reasons stated above, the petition for a writ of habeas corpus is DENIED.  The Clerk shall enter judgment in favor of Respondent and close the file.

**IT IS SO ORDERED.**

Dated:  3/4/2020

HAYWOOD S. GILLIAM, JR.
United States District Judge